IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROBERT KIRKSEY | : | No. 23-258 |

**ORDER-MEMORANDUM**

**AND NOW**, this 19th day of October, 2026, upon consideration of Defendant Robert Kirksey's pro se "Motion for a Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)" (Docket No. 66), and all documents filed in connection therewith, **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

On August 4, 2023, Defendant pled guilty to an Information charging him with one count of criminal conspiracy to deal firearms without a license, one count of dealing firearms without a license, one count of interstate travel to deal firearms without a license, four counts of possession of a machine gun, and one count of possession of a firearm by a felon. At sentencing on October 18, 2024, Defendant had an advisory guideline range of 97 to 121 months of imprisonment, but the Court sentenced him to just 36 months of imprisonment to be followed by three years of supervised release. The Court also permitted Defendant to postpone his self-surrender until June 6, 2025, while Defendant had knee replacement surgery and recovered from that surgery. Defendant is currently incarcerated at FCI Danbury and has a minimum release date, including all available good time credit, of September 21, 2027. Defendant now moves for compassionate release primarily due to various medical circumstances, but also due to his claimed rehabilitation. The Government opposes Defendant's Motion.

We may not ordinarily modify a defendant's sentence after it has been imposed. See 18 U.S.C. § 3582(c); see also Dillon v. United States, 560 U.S. 817, 819 (2010). However, the First

Step Act provides for compassionate release, stating that we may reduce an inmate's term of imprisonment "after considering the factors set forth in [Title 18] section 3553(a)" if we find that "extraordinary and compelling reasons warrant . . . a reduction" and "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13. A defendant bears the burden of proving by a preponderance of the evidence that these requirements are met. United States v. Lewis, Crim. A. No. 96-336, 2022 WL 2067958, at *3 (E.D. Pa. June 8, 2022) (citations omitted), aff'd, No. 22-2190, 2022 WL 4546859 (3d Cir. Sept. 29, 2022). The United States Sentencing Commission's pertinent policy statement provides a list of extraordinary and compelling reasons that may warrant a reduction of sentence. See U.S.S.G. § 1B1.13(b). Nonetheless, "[a] grant of compassionate release is a purely discretionary decision." United States v. Stewart, 86 F.4th 532, 534 (3d Cir. 2023) (citation omitted).

Defendant primarily seeks a reduction in sentence based on his medical circumstances. U.S.S.G. § 1B1.13 provides in pertinent part that medical circumstances can provide an extraordinary and compelling reason for a sentence reduction where, inter alia, a defendant is suffering from "a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). Defendant asserts that he suffers from atrial fibrillation, hypertension, bradycardia, and an enlarged prostate; that the BOP is not providing him with the medical care he needs for his high blood pressure and cardiac conditions, which require long-term or specialized care; and that the inadequate care places him at risk of serious deterioration in his health. In alleging that he is not being provided with the care he requires, Defendant focuses

almost exclusively on his first month of incarceration, when he contends he was deprived of certain cardiac and hypertension medications for up to twelve days and then suffered a stroke.

The Government has submitted, and we have carefully reviewed, Defendant's prison medical records, which confirm Defendant's atrial fibrillation, hypertension, enlarged prostate, and bradycardia. (See, e.g., Docket No. 68, at 97, 120, 232.) The records reflect that when Defendant arrived at FCI Danbury on June 6, 2025, medical staff placed orders for Apixaban (Eliquis) for atrial fibrillation, and Losartan and Metoprolol Tartrate for hypertension. (Id. at 103, 141-144.) However, on June 13, 2025, Defendant reported that he had "been out of his medication for a few days following his arrival." (Id. at 95.) The medical staff renewed Defendant's three medications that same day. (See id. at 97.) Three weeks later, on July 2, 2025, Defendant complained of an acute onset of facial numbness, slurred speech, and numbness in his left arm. (Id. at 91.) Concluding that these were signs of a stroke, the prison medical staff urgently referred him to the local emergency room. (Id. at 92.) Defendant told doctors at the hospital that, starting on June 6, 2025, he had not taken his Eliquis and Losartan for 10 to 12 days, asserting that the prison did not have Losartan and that there was a "miscommunication about Eliquis." (Id. at 308.) At the same time, he affirmed that he had been taking his "usual medications regularly after that." (Id.) It was determined at the hospital that Defendant had suffered a stroke. (See id. at 319.)

The prison medical records reflect that, following Defendant's stroke, he has been consistently treated for his hypertension, atrial fibrillation, and enlarged prostate with prescription medications, and that his blood pressure is checked regularly. (See id. at 4-5, 127-129, 141-45.) His prescriptions are periodically modified when deemed necessary. (See, e.g., id. at 15, 41, 74.) On two occasions, on July 19, 2025, and August 11, 2025, Defendant was again transported to the local hospital with reported stroke-like symptoms, but on both occasions, he was not found to have

suffered a new stroke. (See id. at 180, 182, 208, 231-32; see also id. at 74, 238.) Defendant was also examined at FCI Danbury on September 5, 2025, after he missed the pill line from which he obtains his medications and experienced left-side numbness. (Id. at 21-22.) However, he was found to have no symptoms of an acute stroke or cardiac compromise at that time. (Id.) In December of 2025, Defendant was taken offsite for a neurological consultation concerning numbness he was experiencing residual to his July 2025 stroke. (See id. at 169.) The neurologist's medical report states that his numbness might or might not improve and that there are no medications to address it. (Id.) The most recent records that have been submitted state that Defendant has reported no stroke-like symptoms since August of 2025, denies any "vision changes, shortness of breath, chest pain, headache, or dizziness," and reports that he is taking his medications and tolerating them well. (Id. at 3.)

Nothing in Defendant's medical records indicate that Defendant currently requires long-term or specialized medical care that is not being provided to him and risks "serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). In attempting to establish otherwise, Defendant repeatedly refers back to the claimed interruption of his medication in June of 2025 and his subsequent July 2025 stroke. However, even accepting without deciding that Defendant received inadequate medical care in the first month of his incarceration, we cannot conclude based on the record before us that his medical care has been inadequate since that time. Rather, the records reflect that Defendant is being actively treated and monitored for his documented conditions, and that those conditions are currently controlled. Accordingly, we can only conclude that Defendant has failed to establish his entitlement to compassionate release based on medical circumstances,[1] and we deny his Motion insofar it seeks release on that basis.

---

[1] Defendant, who is 64 years old, also briefly suggests that he is entitled to a reduction of

Defendant also asks us to consider his rehabilitation in conjunction with his other circumstances. While rehabilitation alone does not warrant compassionate release, it "may be considered in combination with other circumstances." U.S.S.G. § 1B1.13(d). Defendant asserts that he has an "excellent disciplinary record" and has participated in "numerous educational and rehabilitative programs," including programs addressing drug treatment and education, career development, and adult education. (Def.'s Mem. at 13-14.) These efforts are commendable, but do not exceed what we typically expect of incarcerated persons. Moreover, in the absence of any other recognized basis on which we could find an extraordinary and compelling reason for a sentence reduction, Defendant's rehabilitation alone cannot support the granting of his Motion. See U.S.S.G. § 1B1.13(d).

Finally, even if Defendant had established an extraordinary and compelling reason for relief, we would deny his motion for sentence reduction based on consideration of the § 3553(a) factors. At the time of his arrest, Defendant was a felon prohibited from possessing a firearm. In spite of this prohibition, Defendant participated in a conspiracy to deal firearms, buying and selling over 50 firearms in approximately 90 days, and possessing deadly machine guns on at least four occasions. Given the substance of his crimes, for which he received a below-Guidelines sentence,

---

sentence based on medical circumstances because he is "experiencing deteriorating physical or mental health because of the aging process[] that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B); (see Def.'s Mem at 10). He asserts that he has "physical mobility issues" associated with his knee replacement, that FCI Danbury does not have handicap accessible showers and other bathroom facilities with rails, and that most buildings do not have ramps or elevators. (Def.'s Mem. at 17.) He thus asserts that "self-care in the prison environment [is] more difficult," and that "this concern has only been exacerbated since his stroke." (Id.) However, the only references to knee pain in the medical records are from June and August 2025. (Docket No. 68, at 47, 101, 114, 121.) There is no indication that this pain (or any other knee issues) is ongoing, or that the pain in the Summer of 2025 in any way hindered him from providing self-care or necessitated access to handicap-accessible facilities. Accordingly, Defendant has not established that he is entitled to a reduction under U.S.S.G. § 1B1.13(b)(1)(B).

his current sentence remains necessary to reflect the seriousness of his crime, for both public and private deterrence, to promote respect for the law, and to provide just punishment. See 18 U.S.C. § 3553(a). For all of these reasons, we deny Defendant's Motion for compassionate release.

BY THE COURT:

/s/ John R. Padova, J.

______________________________

John R. Padova, J.